379 P.2d 774

**Winnie DAVIS, Administratrix of the Estate of Patricia Davis, Deceased, Plaintiff-Appellant,**

v.

**Clemon SEVERSON, Richard Wade and Richard I. Wade, Defendants-Appellees.**

No. 7074.

Supreme Court of New Mexico.

Feb. 4, 1963.

Rehearing Denied April 4, 1963.

James M. H. Cullender, Thomas B. Forbis, Roswell, for appellant.

Atwood & Malone, Robert F. Turner, R. D. Mann, Roswell, for appellees.

MOISE, Justice.

Patricia Davis, a fifteen year old girl, was killed while riding as a non-paying passenger in an automobile with Richard Wade and Clemon Severson.

The original complaint filed by plaintiff-appellant, as administratrix of the estate of Patricia Davis, alleged that on March 12, 1960, Patricia Davis was killed while riding as a guest of Clemon Severson and Richard Wade in an automobile being

driven by Severson and Wade "in a careless, reckless, negligent, wanton and heedless manner in disregard of the rights and safety of Patricia Davis * * *" It was further alleged that the automobile belonged to Richard I. Wade, with whom the son, Richard, made his home, and that at the time of the accident Clemon Severson and Richard Wade were operating the automobile "for family purposes, and as the agent of Richard I. Wade * * *."

Defendants-appellees Richard I. Wade and Richard Wade filed an answer in which they admitted that at the time alleged, Patricia Davis was riding as a guest of Clemon Severson and Richard Wade in an automobile being driven by Severson and denied all the other allegations set forth above.

After obtaining leave of the court, plaintiff filed an amended complaint which repeated the allegations noted above and added an allegation that both Richard I. Wade and Richard Wade "had specifically authorized the defendant Severson to drive the automobile for them on this occasion." The amended complaint included what plaintiff denominated an alternative plea that the "automobile was the property of and belonged to Richard I. Wade, the father of Ricky (Richard) Wade, with whom he made his home at the time of the accident set forth, and Ricky (Richard) Wade, title being taken in the names of both the father and son and that both the father and the son

had authorized the defendant Severson to drive the car for the purpose for which it was being driven. Plaintiff's original prayer for $100,000 damages was amended to allege $50,000 actual damages and $50,-000 punitive damages.

At the time of filing the amended complaint, a request for a jury was filed and the deposit for jury fees was tendered to the clerk. The court first ordered the amended complaint be rejected for filing and the jury request be denied as not timely under Rule 38 of Rules of Civil Procedure (§ 21-1-1(38), N.M.S.A.1953). Thereafter, the court reconsidered and permitted the filing of the amended complaint, but again ruled that the jury request and tender of jury fees was late and that a jury had been waived.

No service of process having been obtained against Clemon Severson, the cause was dismissed without prejudice as to him and proceeded to trial before the judge without a jury against the two other defendants. At the conclusion of the trial the court decided the issues for defendants and dismissed plaintiff's complaint. In its decision, the court found title to the automobile was held jointly by Richard Wade and his father Ivan Wade (Richard I. Wade); that the car was "being operated by Clemon Severson * * *" and, further, that at the time of the accident "Clemon Severson approached a sharp curve at a high and excessive rate of speed without

keeping a proper lookout and without having said automobile under proper control, and so negligently operated said automobile as to cause the same to overturn and kill Patricia Davis." The court then found that the accident was not intentional and that the car was not operated in heedless or reckless disregard of the rights of others as those terms are used in § 64–24–1, N.M.S.A.1953.

Plaintiff first complains of the trial court's denial of a jury trial. § 21–1–1(38) (b) (1) provides:

"Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. * * *"

Plaintiff did not demand a jury within 10 days after the answer was filed, but bases her claim of right on the fact that she was permitted to file an amended complaint and did make demand and tender the jury deposit at that time.

■ It is clear from the decisions of the federal courts where the identical rule prevails, that once a jury has been waived by failure to make a timely demand, the right to a jury is not automatically revived by filing an amended pleading. Moore v. United States, 5 Cir., 196 F.2d 906; Munkacsy v. Warner Bros. Pictures, Inc., D.C.,

2 F.R.D. 380. Plaintiff is entitled to a jury trial only on the new issues raised by the amended pleading. New Hampshire Fire Insurance Co. v. Perkins, D.C., 28 F.R.D. 588.

■ As we understand plaintiff, it is her contention that the amended complaint was necessary in order to properly allege alternatively that the car was a family purpose car being used for family purposes, or that Clemon Severson was acting as an agent. In this connection, it is noted that in both complaints it is alleged that the car was a family purpose car. So far as we can determine, the only new allegation of a material nature is the alternative statement that title to the car stood in both Ricky (Richard) Wade and his father Richard I. Wade, and that both had authorized Clemon Severson to drive it for the purpose for which it was being driven, and that he was the agent of both. The situation is comparable to that present in American Fidelity & Casualty Co. v. All American Bus Lines, Inc., 10 Cir., 190 F.2d 234, where parties plaintiff were changed in amended complaint. The following language quoted from that case sets forth the law applicable under the facts here present.

"Complaint is made that the court denied the demand of American for a jury trial. It is said that in its answer to the complaint as amended and supplemented by the order substituting

Security as the party plaintiff, American set up a great number of defenses which involved issues of fact, for instance the question of good faith or bad faith in the rejection of the offer of settlement of the case pending in the state court; and that as between Security and American, the latter was entitled to a jury trial of such issues. Under Rule of Civil Procedure 38, the right of jury trial of an issue is waived unless a demand for it is made not later than ten days after service of the last pleading relating to such issue. American was the defendant in the action from its beginning. The issue of bad faith on its part in rejecting the offer of settlement of the action pending in the state court was squarely joined on the face of the original complaint and the original answer. No demand was made for a jury trial of that issue within ten days after the filing of the answer, and it was fully tried to the court without a jury. The substitution of Security as the party plaintiff did not change in any matter that issue. Neither did it change in any substantial respect any other issue of fact in the case. American had effectively waived its right to a jury trial. And the substitution of Security as the party plaintiff, without injecting into the case any new or different issues of fact, did not create in American a new right to de-

mand a jury trial. Neither did it revive such right. Even though in such circumstances the court had the power in its discretion to grant a jury trial, the denial of the demand of American did not constitute reversible error. Roth v. Hyer, 5 Cir., 142 F.2d 227, certiorari denied, 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573."

■ Plaintiff argues that since the trial court was moved to permit the filing of an amended complaint it must follow that he was convinced that a new issue was thereby being pleaded. That this does not follow should be apparent. Under Rule 15 (§ 21–1–1(15), N.M.S.A.1953) amendments are to be freely allowed so that the ends of justice may be accomplished. Plaintiff felt her pleadings would be improved by amending and the court was moved to allow it. But allowance of the amendment does not imply that the court thought new or different issues were thereby raised, and the right to jury trial previously waived thereby revived. See New Hampshire Fire Ins. Co. v. Perkins, supra; E. H. Tate Company v. Jiffy Enterprises, Inc., D.C., 16 F.R.D. 571; 5 Moore's Federal Practice, § 38.41.

Plaintiff's second point is stated by her as follows: "An expert witness may only express an opinion based upon a fact or facts in evidence." From a reading of the argument under this point it is our conclusion that plaintiff is not complaining that

evidence not in the record was used by the expert, but rather that proof in the record was interpreted or used incorrectly.

The record discloses that plaintiff had one Leon A. Redman make some tests on the highway at or near the place where the accident happened, concerning the distance in which automobiles of several makes would stop at different speeds. One of these was a Lincoln, an automobile some 150 pounds heavier than an Oldsmobile 88, such as was involved in the accident. Another was an Oldsmobile 88 similar to the one in which plaintiff's decedent was riding when killed. The witness testified that the Oldsmobile could be stopped in 127 feet when traveling at 50 miles per hour, and in 185 feet when traveling 70 miles per hour. He also testified that the Lincoln required 301 feet to stop when traveling 60 miles per hour.

Later in the trial, defendants produced an expert in reconstructing accidents, and in framing a hypothetical question for the purpose of having the expert determine a "drag factor" to be used in estimating the speed of the death car on the occasion of the accident, used the stopping distance of the Lincoln as testified to by plaintiff's witness Redman rather than the stopping distance of the Oldsmobile. On cross examination by plaintiff's counsel the expert was not questioned as to how the "drag factor" or his opinion of speed would have been changed if the stopping distance of the Oldsmobile had been used.

From the foregoing it is clear that plaintiff's point is without merit. First, the expert's opinion was based on facts in the record. Second, if plaintiff had wanted an opinion from the expert based on different facts in the record, it could have been elicited on cross examination. Third, the expert expressed an opinion that the speed of the car at the time of the accident was about 49 miles per hour. One eye witness testified it was traveling "between 40 and 50 miles per hour"; another estimated "40 or 45 miles" an hour, and a police officer testified without objection that the driver stated "he was running 50 to 60 miles per hour on the approach to the curve." The court heard all the evidence and found that at the time in question "Clemon Severson approached a sharp curve at a high and excessive rate of speed without keeping a proper lookout and without having said automobile under proper control, and so negligently operated said automobile as to cause the same to overturn and kill Patricia Davis."

Even though we might agree that a more dependable estimate of speed might have been produced if the stopping distance of a car similar to the one involved in the accident had been used in the hypothetical question—nevertheless, we see no reversible error in permitting the use of

the figures that were utilized. When a case is tried to the court without a jury, even if the evidence had been erroneously admitted, and here we do not consider that it was, nevertheless, plaintiff has not shown how she was prejudiced because it does not appear that the court considered the evidence. There being ample evidence as to speed from other witnesses we will not assume that the court relied on such evidence which is generally of questionable reliability to the exclusion of the direct testimony already mentioned. Compare Keil v. Wilson, 47 N.M. 43, 133 P.2d 705, 148 A.L.R. 397.

Actually, plaintiff's principal cause for complaint arises from the fact that the court, while finding negligence as already indicated, also found that the accident which resulted in the death of Patricia Davis did not result from intentional conduct of the driver, nor was his operation of the car "heedless or in reckless disregard of the rights of others" as those terms are used in § 64–24–1, N.M.S.A.1953. However, the attack made on the finding (we are inclined to the opinion it might more accurately be denominated a conclusion of law) is not that it is not supported by substantial evidence, but that while the court stated that it found no intentional act or heedless or reckless disregard of the rights of others, it was in fact applying as a test for liability a degree of negligence sufficient to convict of manslaughter.

There is not one word in the record to support this claim, and to hold that this is what the court was doing would require us to disregard the finding mentioned and to hold that the court said one thing and meant another. This we would do only under the clearest kind of proof.

It is asserted that in a colloquy between the court and counsel, the court stated that the negligence which plaintiff was required to show was that degree necessary to convict for involuntary manslaughter. Such facts do not appear in the record before us and under our rule 17(1) (§ 21–2–1(17) (1), N.M.S.A.1953) we are limited to an examination of the record below in our consideration of the appeal. Sturgeon v. Clark, 69 N.M. 132, 364 P.2d 757.

Plaintiff attempts to overcome the obvious hurdle presented by the refusal of the trial judge to include the claimed facts in the bill of exceptions by filing what she denominates a bystander's bill. This she has done by filing in court a statement of what she claims transpired, supported by affidavits of the daughter of the plaintiff, and of the two attorneys who were present representing plaintiff. Bystander bills are provided for by statute in a few states. 4 Am.Jur.2d 899, Appeal and Error, § 449. However, there is no provision for it in our rules or statutes. Even if the exact colloquy took place as claimed in the so-called bystander's bill, it would assist plaintiff not

at all in view of the court's express holding that the statutory degree of negligence was not present upon which to base liability. Defendants moved that the bill be stricken. The motion should be sustained.

Plaintiff complains of the refusal of the trial court to make certain findings of fact requested by her that were material to her case and supported by substantial evidence, and also complains concerning the court's failure to adopt her requested conclusions of law.

We have examined the requested conclusions of law refused by the trial court and find no error in their refusal. We see nothing in them contrary to the conclusions reached by the court which would alter the outcome.

So far as the requested findings refused by the court are concerned, the plaintiff argues only one of them in which she asked the court to find that Patricia was a minor of the age of 15 years while Ricky Wade was an adult of the age of 22 years, and that Patricia's parents had told Ricky that Patricia could not go with him on the night of the accident, and that Ricky knew that she accompanied him in violation of her parents' orders.

■ Although it is not apparent from the brief in chief, it becomes clear from plaintiff's reply brief that her position is simply that since Patricia was a minor and did not have permission to accompany Ricky Wade and Clemon Severson, but went with them without permission and they were aware of this fact, she was not a guest under § 64–24–1, N.M.S.A.1953, and that defendants should have been held liable upon a finding of simple negligence. § 22–20–1, N.M.S.A.1953.

Section 64–24–1, N.M.S.A.1953, reads as follows:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others."

In the amended complaint it is alleged that Patricia was riding as a "guest" and plaintiff's requested findings of fact asserted her death "was the result of the heedless and reckless disregard of the rights of others," this being the degree of negligence required to find liability for death or injury of a guest. Plaintiff's requested conclusions also recited that defendants were guilty of this same degree of negligence. Also, in the points relied on for reversal as stated in the praecipe filed by plaintiff, no point raising the status of Patricia is asserted.

■ It is thus clear that the position now asserted is an afterthought, and was not the theory upon which the case was filed or tried. Where no ruling is invoked in the trial court and the question is not jurisdictional, it cannot be raised for the first time in this court. § 21–2–1(20), N.M.S.A. 1953; Danz v. Kennon, 63 N.M. 274, 317 P.2d 321.

Plaintiff complains that the trial court erred in assessing against her costs of the part of the transcript of record which she did not request in her praecipe and also for assessing against her the costs of the deposition of L. A. Redman taken at defendant's request.

It appears that plaintiff only asked for a part of the record of the trial, and by counter praecipe the defendant requested additional parts of the proceedings.

Under Supreme Court Rule 12 (§ 21–2–1 (12), N.M.S.A.1953), if an appellant does not request the full record, there must be included in the praecipe a "concise statement of the points on which he intends to rely." Thereafter, the appellee may by counter praecipe specify other parts of record and proceedings "as he may deem necessary for the review of the points stated by appellant" and they shall be included in the transcript at the "initial cost" of appellant.

■ This is what transpired. Plaintiff asked for the testimony of only two witnesses, viz., L. A. Redman and A. O. Pipkin, and stated as two of the points to be relied on for reversal, the following:

"(B) The measure of negligence obviously used by the trial court, see exchange above, was in excess of that required by statute to hold a defendant under the quest [guest] statute.

"(C) The Court allowed tests made in the distance required to stop a 1949 Lincoln to establish the 'drag' factor of the stretch of road where this accident occurred and then allowed defendant's expert to use this 'drag' factor in testifying as to the distance required to stop a 1959 Oldsmobile, like the death car, when there was in evidence the distance required to stop a 1959 Oldsmobile which the expert could have used to properly establish the 'drag' factor of the road."

Thereafter, by counter praecipe, the defendant asked for inclusion in the transcript of the testimony of most of the other witnesses testifying for both plaintiff and defendant. They also stated a point, not argued here, under Supreme Court Rule 17 (2) (§ 21–2–1(17) (2), N.M.S.A.1953) on which they would rely. The assessment of costs on appeal is for this court, and not for the trial court. Supreme Court Rule 22 (1) (§ 21–2–1(22) (1), N.M.S.A.1953). We do not understand that the trial court has made any determination concerning

final assessment of the costs of the transcript. The determination had to do with the "initial cost." In this connection it had wide discretion, and we see no basis for any contention that the rules were not followed meticulously nor that there was any abuse of discretion.

It seems clear to us that when plaintiff stated in her point (B) quoted above, that the court applied an erroneous measure of negligence, the defendants were certainly within their rights in having included in the transcript any and all proceedings which cast any light on the extent of the negligence and the weight attributed thereto by the court. Our discussion of plaintiff's point 2 above should be sufficient answer in itself to demonstrate its pertinency.

Concerning the deposition, the costs of which defendant was held to pay as part of the trial expense, it should be sufficient to point out that under Rule 54 (d) (§ 21-1-1(54) (d), N.M.S.A.1953) the trial court is given a large measure of discretion. Our rule is identical with Rule 54(d) of Federal Rules of Civil Procedure, and it is there held that the cost of depositions may be taxed as costs if the taking of the deposition was reasonably necessary even though not used at the trial. 6 Moore's Federal Practice, § 54.77 [4]; Harris v. Twentieth Century-Fox Film Corporation, 2 Cir., 139 F.2d 571; Federal Deposit Ins. Corporation v. Fruit Growers Service Co., D.C., 2 F.R.D. 131. No abuse of discretion is apparent or demonstrated in the allowance of the cost of taking the deposition of the man employed by plaintiff to make certain tests designed to demonstrate the speed of the death car. The fact that the witness appeared and testified and the deposition was not used to impeach him, or for any other purpose, does not alter the situation.

Having considered all points advanced by plaintiff on this appeal, and finding no error, it follows that the judgment should be affirmed.

It is so ordered.

CARMODY and NOBLE, JJ., concur.

COMPTON, C. J., and CHAVEZ, J., not participating.